IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOSEPH LAMBETH,              )
                             )
      Plaintiff,             )
                             )
v.                           )  CIVIL ACTION NO. 10-00232-N
                             )
MICHAEL J. ASTRUE,           )
Commissioner of Social Security, )
                             )
      Defendant.             )

ORDER

Plaintiff, Joseph Lambeth, filed this action seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") that he was not entitled to either disability insurance benefits ("DIB") under Title II of the Social Security Act (the Act) or Supplemental Security Income ("SSI") under Title XVI of the Act. This action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R.Civ.P. 73 (doc. 15) and pursuant to the consent of the parties (doc. 14). Further, plaintiff's unopposed motion to waive oral arguments (doc. 12) was granted on January 18, 2011 (doc. 13). Upon consideration of the administrative record (doc. 8) and the parties' respective briefs (docs. 9 and 10), the undersigned concludes that the decision of the Commissioner is due to be **AFFIRMED**.

I. Procedural History.

Plaintiff Lambeth filed an application for disability insurance benefits on November 19, 2007, claiming an onset of disability as of May 20, 2007. (Tr. 100-103).

1

Lambeth also filed an application for Supplemental Security Income benefits on November 19, 2007 (Tr. 93-99), with a protective filing date of November 17, 2006 (Tr. 86). These applications were initially denied on January 4, 2008. (Tr. 68-72, 75-77). On February 21, 2008, Lambeth requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 80-81)[1]. Lambeth's request was acknowledged on February 28, 2008, and Lambeth was instructed on the procedures that would follow. (Tr. 82-83). On May 28, 2009, Lambeth was notified that his case would be heard on July 16, 2009. (Tr. 21, 26). The hearing was held as scheduled on July 16, 2009. (Tr. 44-65).

On August 26, 2009, the ALJ issued a decision denying Poe's applications. (Tr. 9-17). The ALJ concluded that Lambeth retained the residual functional capacity to perform less than medium[2] exertional work. (Tr. 12). The ALJ determined that there are other jobs existing in significant numbers in the national economy which Lambeth can perform. (Tr. 16). Consequently, the ALJ concluded that Lambeth "has not been under a disability, as defined in the Social Security Act, from May 20, 2007, through the date of this decision." (Tr. 16).

Lambeth requested review by the Appeals Council, and on March 6, 2010, the Appeals Council refused to overturn the ALJ's decision (Tr. 1-4), thereby making the

---

[1] Plaintiff's applications were processed pursuant to 20 C.F.R. §§ 404.906(b)(4), 416.1406(b)(4), whereby after the initial determination, the reconsideration step in the administrative review process was eliminated, and the claimant could immediately request an administrative hearing. All references to the Code of Federal Regulations (C.F.R.) are to the 2010 edition.

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981 (2010). Lambeth appeals from that decision and has exhausted all his administrative remedies.

II. Issues on Appeal.

1. Whether the ALJ failed to properly develop the record.

2. Whether substantial evidence supports the ALJ's residual functional capacity findings.

III. Findings of Fact.

A. Medical Evidence.

On May 19, 2007, Lambeth presented to the emergency room after apparently having a seizure and falling and hitting his head at home (Tr. 161). The admitting physician, William Whittle, M.D., noted that this was a "new onset seizure" in that "previous episodes [were] years ago." (Tr. 163). Lambeth was started on Dilantin, an antiseizure medication (Tr. 175). Dr. Whittle reported that he had not seen Lambeth in years, noting that it was when he had a seizure in 1987 (Tr. 175). A CT scan and MRI of Plaintiff's brain taken during the 2007 hospitalization were unremarkable, and an echocardiogram was normal (Tr. 165, 178). When Lambeth was discharged from the hospital two days later, Dr. Whittle's discharge summary indicates a final diagnosis of "Seizures, questionable seizure disorder" (Tr. 175).

Dr. Whittle referred Lambeth to Hamp Greene, M.D., a neurologist, who examined him in June 2007 (Tr. 182). Dr. Greene noted that Lambeth likely had a major motor seizure in 1987 and, following a car accident in 1994, was in a coma for 12 days (Tr. 182). Dr. Greene could find no focal abnormalities and noted that Lambeth's EEG was unremarkable (Tr. 182). Dr. Greene diagnosed Plaintiff with a seizure disorder,

3

likely idiopathic epilepsy, and advised him to continue taking Dilantin (Tr. 182). Lambeth was instructed to return to Dr. Green in "one year or sooner if needed" (Tr. 182).

On January 22, 2008, in a brief note hand-written on a prescription form, Dr. Whittle stated that Lambeth was totally disabled due to a seizure disorder (Tr. 196). In a July 2008 letter, Dr. Whittle again stated that Lambeth was totally disabled due to severe seizure disorder (Tr. 197). Dr. Whittle also indicated that Lambeth had other medical problems consistent with joint and shoulder pain (Tr. 197). Dr. Whittle stated that Lambeth should not drive and should avoid high places and swimming (Tr. 197).

    B.  Other Evidence.

Lambeth was born in 1969 and was, therefore, 37 years old on his alleged disability onset date and 40 years old on the date of the ALJ's opinion (Tr. 17, 93). Lambeth has a high school education (Tr. 119) and has worked as a diesel mechanic and machine operator (Tr. 61, 116).

In the Daily Activities Questionnaire completed by Lambeth in December 2007, he declared that he took care of his personal needs without assistance, cooked meals, cleaned the rooms of his mobile home, took out the trash, shopped for personal items and groceries without assistance, watched television, read the newspaper and magazines, visited with friends and family, drove, and worked on his truck (Tr. 133-37).

Lambeth testified at his administrative hearing that he stopping working in August 2006 when he was incarcerated for domestic violence (Tr. 51-52). He served nine months incarceration and was released April 30, 2007 (Tr. 53). Shortly thereafter, in May of 2007, Lambeth was hospitalized for a seizure (Tr. 53). Lambeth suffered a prior

4

seizure in 1987 at which time he was hospitalized for a week (Tr. 53). Lambeth testified that he took no seizure medication between 1987 and May of 2007 (Tr. 54). He began taking seizure medication following a seizure in 2007 and has not had another seizure since that time (Tr. 54-56). Lambeth also stated that he possessed a valid driver's license and that his physician recently had allowed him to start driving again (Tr. 56-57).

Lambeth testified that he was in a coma for a month following a car accident in 1999 (Tr. 51, 53). He had "spurs" in his right shoulder and needed surgery but did not have health insurance (Tr. 60). He also had six "crushed" vertebrae in his back (Tr. 60). However, no medical records have been proffered which either confirm these conditions or demonstrate that any specific physical limitations were ever assessed as a result of these conditions.[3]

Lambeth also testified that, upon his release from jail, he was required to do 100 hours of community service and attend an anger management course (Tr. 57-58). His community service was performed during the weekdays, five days a week, at the Brewton Police Department where he "helped them clean up cars and stuff like that" (Tr. 58). His anger management classes were every Tuesday night for 30 or 40 sessions (Tr. 58).

Lambeth further testified that he spends just about every day hanging around the Speed Shop in Brewton with his friends socializing and visiting (Tr. 59). At his home, he mows the lawn and does yard work, as well as washing and drying clothes (Tr. 59).

---

[3] The ALJ asked Lambeth's attorney at the hearing whether the records was complete (Tr. 47). Lambeth's attorney stated that Dr. Whittle saw plaintiff on one occasion in January 2009 and that Dr. Whittle's treatment record for that occasion was not part of the file but that the record was "complete up to that point." (Tr. 47). When asked by the ALJ whether he wished to submit the January treatment record, Lambeth's attorney stated that Lambeth's testimony would "cover it." (Tr. 47).

According to Lambeth, "[t]here ain't nothing I can't do, but I'm a liability if I go to work anywhere" (Tr. 59).

C. <u>Vocational Expert Testimony</u>.

The ALJ asked Eric Anderson, a vocational expert (VE), to consider a hypothetical individual who was Lambeth's age, with the same education, and work experience as Lambeth. The hypothetical individual also was assigned the following limitations: no work around hazards, machinery, unprotected heights, etc., but without exertional limitations (Tr. 62). The ALJ asked whether there were occupations that the hypothetical person could do (Tr. 62).

The VE responded that the individual could perform light[4] jobs, including assembler (Dictionary of Occupational Titles[5] (DOT) # 915.687-034) (7,000 jobs in Alabama and 370,000 jobs in the United States); cashier (DOT # 211.462-010) (56,000 jobs in Alabama and 3.5 million jobs in the United States); and security guard (DOT # 372.667-034) (13,000 jobs in Alabama and 520,000 jobs in the United States) (Tr. 62).

IV. <u>Conclusion of Law</u>.

A. <u>Standard of Review</u>.

In reviewing claims brought under the Act, this Court's role is a limited one. Specifically, the Court's review is limited to determining: 1) whether the decision is

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[5] U.S. Dep't of Labor, Employment & Training Admin., Dictionary of Occupational Titles (4th ed. 1991).

supported by substantial evidence, and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). Thus, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). Rather, the Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[ ]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).

    B.    <u>Applicable Law</u>.

An individual who applies for Social Security disability benefits or supplemental security income must prove their disability. *See* 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven their disability. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. At the first step, the claimant must prove that he or she has not engaged in substantial gainful activity. At the second step,

the claimant must prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If, however, the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity and age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); *see also* Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (*citing* Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

    C.    Discussion.

        **1.    The ALJ complied with his duty to develop the record.**

Plaintiff maintains that the ALJ erred by failing to properly develop the record. Specifically, plaintiff argues that in light of Dr. Whittle's opinion that plaintiff was

"totally and completely disabled" the ALJ should have contacted Dr. Whittle prior to rendering his opinion. (*See* Doc. 9 at p. 6) Additionally, plaintiff contends that in light of plaintiff's testimony regarding his musculoskeletal problems and Dr. Whittle's opinion that those problems contributed to plaintiff's inability to work, the ALJ erred in failing to order a consultive examination. (Id.)

Controlling weight may only be given to a treating physician's medical opinions that are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). The Eleventh Circuit recently addressed this issue as follows:

> Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." Lewis, 125 F.3d at 1440; see also 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1241. With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id.* at 1240–41.

Winschel v. Commissioner of Social Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). Dr. Whittle's opinion regarding Lambeth being "totally disabled" (Tr. 196, 197) is not only conclusory but inconsistent with Lambeth's own testimony regarding his normal activities of daily living and capabilities.

Dr. Whittle's opinion also fails to measure up when evaluated against the other regulatory criteria for weighing medical source opinions. The regulations provide: "The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404,1527(d)(3). As applied in this case, Dr. Whittle did not offer any explanation or even cursory justification for the majority of his opinion (Tr. 196,

9

197). The ALJ credited only the opinion that, in view of the documented seizure on May 19, 2007, Lambeth "is to do no driving, climbing, swimming and so forth" (Tr. 175) and "avoid high places" (Tr. 197).

The regulations also provide that "the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(d)(2)(i). According to the evidence presented at his hearing before the ALJ, Dr. Whittle "had not seen [Lambeth] in years[(i.e., since his one previous seizure in 1987)]," when he presented to the emergency room in 2007 following a "new onset seizure" (Tr. 163). Following Lambeth's discharge on May 21, 2007, Dr. Whittle saw Lambeth on only two occasions, June 3, 2008 (Tr. 197) and "January of '09" (Tr. 47). Although Dr. Whittle mentions in his letter dated July 31, 2008 (Tr. 197) that Lambeth suffers from "severe joint pain, shoulder pain," this statement is inconsistent with Dr. Whittle's assessment of Lambeth dated May 19, 2007 (Tr. 162) as "[a] muscular white male in no acute distress . . . [who] moves all extremities well," and also with Lambeth's own written statement and testimony that he cooked, cleaned, mowed the lawn, went shopping, watched television, read the newspaper and magazines, visited with friends and family, and worked on his truck (Tr. 59, 133-37). Moreover, Lambeth's reported daily activities were inconsistent with his claim and with Dr. Whittle's opinion that Lambeth's impairments rendered him completely unable to work. The regulations state: "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 404.1527(d)(4). Dr. Whittle's opinion is inconsistent with his own treatment notes that do not reflect any diagnostic findings consistent with his opinions. *See* <u>Kennedy v. Astrue</u>, 2010 WL 1643248, at *7 (S.D. Ala. Apr. 21, 2010)

(treating physician's opinion not given controlling weight where opinion was not supported by treatment notes).

The ALJ relied only upon Dr. Whittle's opinion that, in view of the seizure Lambeth experienced on May 19. 2007, Lambeth could not "work at unprotected heights, around hazardous machinery, and working near bodies of water, or work requiring commercial driving as defined in 20 CFR 404.1567(c) and 416.967(c)." (Tr. 12). After his evaluation of all the evidence of record, including Lambeth's testimony and written statements, the ALJ specifically concluded that:

> The claimant alleges that he was unable to work because of his impairment of seizure disorder that prevented him from performing gainful employment. The medical evidence shows that the claimant does have a medically determinable impairment, but the full record does not support his allegations of total disability. The claimant has managed to work for years at various jobs without difficulties of seizure episodes which he reported that he had since a child. Claimant testified that he did not return to work after the hospitalization in May 2007 due to seizure episode and he has not sought any other employment. Claimant reported that he had one other seizure back in 1987 and no more until May of 2007. Claimant denied any further seizure activity since that time. He continues to take Dilantin 300 mg per day, which suggests that his seizures are being controlled with medication.
>
> The claimant noted in his activities of daily living report in Exhibit 5E that he can take care of his own personal needs without assistance; watch television; listen to the radio; do the laundry; prepare cooked meals; take out the trash; shop for personal items and groceries without assistance; mow the lawn, walk to visit with friends and family; and drive ; work on his truck – all consistent with some work related activity. Claimant testified that Dr. Whittle stopped him from driving, but since he has not had a seizure since May of 2007 his driving privileges was restored earlier this year. . . . Claimant denied having any other seizures before the one . . . in 1987 and he has not had another one since 2007 – all which are inconsistent with his allegations of greater limiting functional abilities.

(Tr. 14). The ALJ discounted Dr. Whittle's opinion that Lambeth was totally disabled from full time employment because it was "inconsistent with his office treatment notes

11

during the relevant period" and "[t]he record is absent of any other functional limitations which would impact claimant's ability to perform work-related tasks." (Tr. 14-15). The ALJ further concluded that:

> [T]he claimant has overstated the extent of his medical condition and functional restrictions. While the claimant's condition may reasonably be expected to result in mild to moderate deficits, the evidence as a whole does not support a finding that the claimant experiences the disabling limitations as he so alleged. The medical records do not support that claimant is totally disabled. The claimant has denied having any significant medication side effects that would interfere with his ability to perform some work activities. There is no persuasive evidence of record that would preclude the claimant from performing work activities within the restrictions recited above in the body of the decision.

(Tr. 15).

Contrary to Plaintiff's argument (doc. 9 at 6-7), the ALJ was not required to recontact Dr. Whittle for additional information. "[I]t is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's] treating physician' that triggers the duty." <u>White v. Barnhart</u>, 287 F.3d 903, 908 (10th Cir. 2002) (citing 20 C.F.R. § 416.912(e)). Here, the record contained sufficient evidence from which the ALJ could evaluate Dr. Whittle's opinion. Consequently, the cases relied upon by Lambeth are inapposite. For example, in <u>Graham v. Apfel</u>, 129 F.3d 1420, 1423 (11th Cir. 1997), the Eleventh Circuit concluded that:

> Here, the record as a whole is neither incomplete nor inadequate. Instead, the record was sufficient for the ALJ to evaluate Graham's impairments and functional ability, and does not show the kind of gaps in the evidence necessary to demonstrate prejudice. . . .In addition, the ALJ's questioning brought out all aspects of how Graham's symptoms affected her.

129 F.3d at 1423.  Similarly, in <u>McConnell v. Schweiker</u>, 655 F.2d 604, 606 (11th Cir. 1981), the Eleventh Circuit held not only that "the record demonstrates that the ALJ fully and fairly developed the facts relevant to McConnell's claim, and that McConnell was not prejudiced by lack of counsel" but that "[w]e do not think that this ALJ was remiss in questioning McConnell in the way he did."  In <u>Nelm v. Bowen</u>, 803 F.2d 1164, 1165 (11th Cir. 1986), remand was required only because the ALJ determined that the claimant retained the residual functional capacity to perform her past relevant work despite "the absence of evidence of the physical requirements and demands of appellant's [past relevant] work."  *See also* <u>Welch v. Bowen</u>, 854 F.2d 436, 439 (11th Cir. 1988)("[T]he ALJ's exclusive reliance upon the grids to make his determination on job availability was inappropriate under the circumstances."); <u>Cowart v. Schweiker</u>, 662 F.2d 731, 736 (11th Cir, 1981)("[T]he ALJ did not elicit testimony from a vocational expert, nor any other testimony, regarding specific jobs that Mrs. Cowart is able to perform [and thereby] failed to meet his duty of developing a full and fair record.").

The present case is also distinguishable from <u>Brown v. Shalala</u>, 44 F.3d 931 (11th Cir. 1995), in which the Eleventh Circuit held:

> We do not mean to suggest that a remand is warranted any time a claimant alleges that the ALJ has neglected to complete the record. The likelihood of unfair prejudice to a claimant may arise, however, where as here, the evidentiary gap involves recent medical treatment, which the claimant contends supports her allegations of disability, or the receipt of vocational services

44 F.3d at 936, n. 9.  Unlike <u>Brown</u>, Lambeth was represented by counsel who advised the ALJ that it was unnecessary to obtain Dr. Whittle's notes related to a January 2009 visit.  Thus, the ALJ was entitled to assume that such notes did not support Lambeth's

13

allegations of disability to any greater degree than the notes of Dr. Whittle that were already in evidence. Also unlike <u>Brown</u>, the ALJ in the present case obtained the testimony of a vocational expert who was subject to cross-examination by Lambeth.

In <u>Gallina v. Comm'r of Soc. Sec.</u>, 202 Fed. Appx. 387, 388 (11th Cir. 2006), the Eleventh Circuit again emphasized that, "[w]hile the ALJ has a basic obligation to develop a full and fair record, medical sources generally need only be re-contacted when the evidence received from that source is inadequate to determine whether the claimant is disabled." Unlike the claimant in <u>Gallina</u>, Lambeth's written statement and testimony concerning his activities and capabilities were inconsistent with Dr. Whittle's conclusory opinion that Lambeth was totally disabled and unable to work in any capacity. Lambeth's mere mention that he had "spurs in his shoulder" and "six crushed vertebraes" (Tr. 60), without any contention that they interfered with his ability to complete the 100 hours of community service he performed in 2007 or his present ability to mow the lawn and do yard work, as well as to cook, take out the trash and wash and dry clothes, is an insufficient basis to contend that the record is not complete. Under these circumstances, there were no gaps in Lambeth's record, despite there being no other physician's opinion addressing the alleged shoulder spurs or crushed vertebrae.

In <u>Johnson v. Barnhart</u>, 138 Fed. Appx. 266, 268 (11th Cir. 2005), an MRI confirmed that the claimant suffered from degenerative disc disease and protrusion for which she was initially prescribed physical therapy and pain medication and subsequently required, *inter alia*, weekly steroid injections followed by lumbar fusion surgery. In view of the ALJ's rejection of a treating physician's opinion in favor of a non-examining consulting physician's opinion regarding claimant's residual functioning capacity, the

Eleventh Circuit declared that a disability determination could not be made on that record. The record in this case, however, contained sufficient evidence from which the ALJ could evaluate not only Dr. Whittle's opinion but the level of work Lambeth would be able to perform.

In addition, there was no error committed when the ALJ did not order "a consultative examination to determine the nature and extent of [Plaintiff's alleged] back and shoulder problems." (Doc. 9 at 6). Although the ALJ is "bound to make every reasonable effort to obtain from the claimant's treating physician(s) all the medical evidence necessary to make a determination," the burden is on Plaintiff to prove that he is disabled. *See* Sellers v. Barnhart, 246 F. Supp. 2d 1201, 1210 (M.D. Ala. 2002)("While it is reversible error for an ALJ not to order a consultative examination when the evaluation is necessary for him to make an informed decision, . . . the ALJ is not required to order a consultative examination unless the record, medical and non-medical, establishes that such an examination is necessary to enable the ALJ to render a decision.")(*citing* Reeves v. Heckler, 734 F.2d 519, 522 n. 1 (11th Cir.1984); Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir.1988)). An ALJ is not required to order a consultative examination for every impairment which a claimant may allege. *See* McCray v. Massanari, 175 F. Supp. 2d 1329, 1340 (M.D. Ala. 2001) (*citing* Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989). A consultative examination is only required when "necessary" to assist the ALJ in making an informed decision. *See* McCray at 1340 (*citing* Turner v. Califano, 563 F.2d 669, 671 (5th Cir. 1977); *see also* Sellers, 246 F.Supp. 2d at 1210. Here, the record contained no objective evidence of Lambeth'ss alleged musculoskeletal impairments. The only "medical" evidence of Lambeth's back

and shoulder conditions was Dr. Whittle's passing reference in a July 2008 letter to Lambeth's "severe joint pain, shoulder pain" (Tr. 197). None of Dr. Whittle's treatment notes, however, revealed that Lambeth was treated for these conditions. Moreover, the nonmedical record showed that Lambeth's daily activities were not significantly impacted by his alleged musculoskeletal conditions. Lambeth testified that the only medication prescribed was for his seizures. There is no evidence in the record that Lambeth ever took any pain medication except Dr. Whittle's notation by dictation on May 24, 2007, that Lambeth "had one occasion, he got some Dilaudid for his headaches but this is all" (Tr. 175). Thus, the medical and nonmedical record was sufficient for the ALJ to make a decision without ordering a consultative examination to further inquire into Plaintiff's alleged impairments. *See* 20 C.F.R. §§ 404.1519a and 416.919a (providing that a consultative examination may be ordered when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on the claim).

### 2. The ALJ's assessment of Lambeth's residual functional capacity is supported by substantial evidence.

Plaintiff maintains that the ALJ's residual functional capacity findings lack the support of substantial evidence. As stated above, the ALJ found that Lambeth had the residual functional capacity to perform a reduced range of medium work. The record before the court reflects that the ALJ expressly considered, in making the finding, "all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.929 and [Social Security Rulings] SSRs 96-4p and 96-7p" (Tr. 12). The ALJ found that Lambeth's "medically determinable impairments could

reasonably be expected to cause the alleged symptoms; however [his] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [were] inconsistent with the [ALJ's] residual functional capacity assessment (Tr. 15).

A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court. Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986). As applied to this case, the ALJ's credibility determination was clearly articulated and supported by substantial evidence. The ALJ relied upon Lambeth's testimony that he had been taking seizure medication following a seizure in 2007, had not had another seizure since that time, and had no medication side effects (Tr. 54-56). "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (*quoting* Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987) (footnote omitted)).

When evaluating a claimant's credibility, an ALJ also may consider any inconsistencies between a claimant's alleged limitations and his daily activities. *See* Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987). In written statements and testimony, Lambeth acknowledged that he cooked, cleaned, mowed the lawn, went shopping, watched television, read the newspaper and magazines, visited with friends and family, and worked on his truck (Tr. 59, 133-37). Lambeth's varied daily activities are inconsistent with his claim that his impairments rendered him completely unable to work.

In determining Lambeth's residual functional capacity, the ALJ "also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927 and SSRs

96-2p, 96-5p, 96-6p, and 06-3p" (Tr. 12). A treating physician's opinion may be discounted when it is not accompanied by objective medical evidence or is conclusory. *See* Edwards v. Sullivan, 937 F.2d 587, 583 (11th Cir. 1991). Here, the ALJ properly rejected the opinion of Dr. Whittle that Lambeth was totally disabled because this conclusory opinion was inconsistent not only with Dr. Whittle's "very sparse office notes" (Tr. 15) but with Lambeth's own written statements and testimony. In addition, the issue of "disability" is reserved to the Commissioner (Tr. 15). *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (the Commissioner "will not give any special significance" to a medical source opinion on issues reserved to the Commissioner).

Contrary to Lambeth's contention (doc. 9 at 9) that the residual functional capacity applied by the ALJ lacked any support from the medical evidence of record, the ALJ considered and accepted Dr. Whittle's opinion that Lambeth should avoid high places, swimming and driving due to his seizure disorder (Tr. 14, 197). The ALJ pointed out, however, that Lambeth was no longer precluded from driving as initially instructed by Dr. Whittle (Tr. 15). As the ALJ emphasized, the record was absent any other functional limitations that could impact Plaintiff's ability to perform work-related tasks (Tr. 15). It is the ALJ's duty to assess "RFC from using all relevant medical and other evidence in the case." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520(e)).

In sum, the ALJ's assessment of Lambeth's residual functional capacity is supported by substantial evidence and is, therefore, due to be affirmed. *See* Phillips, 357 F.3d at 1241 (concluding that the ALJ's finding that the claimant retained the RFC for sedentary work was supported by substantial evidence).

V.  Conclusion.

For the reasons stated above, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff's benefits be and is hereby **AFFIRMED**.

**Done** this 12th day of July, 2011.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**